PEOPLE *v.* LAKER.

1. TRIAL—TESTIMONY—CREDIBILITY—JURY.

   The credibility and weight to be given the testimony of a witness is within the province of the jury.

2. CRIMINAL LAW—CLOSING ARGUMENT—JURY—COMMON SENSE.

   Closing argument of prosecutor in which he asked the jury to imagine itself in the place of the waitress who was the victim of an unarmed robbery, at 4 a.m., *held*, not asking the jury to act as detectives, but like asking them to use their common sense in performing their functions, hence, not reversible error (CL 1948, § 750.530).

3. ROBBERY—ELEMENTS.

   Elements of force or putting in fear which enter into the taking of property or money of another, and which force or fear is the cause inducing the party to part with his property or money, effects robbery, regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand (CL 1948, § 750.530).

4. SAME—UNARMED ROBBERY—FEAR—EVIDENCE OF FEAR.

   Testimony by a waitress that she was alone in a restaurant in the early morning hours, that a man ordered her to hand over money and lie on the floor, that she did so in response to his orders, that she was frightened at the time, and that the incident so unsettled her nerves that she quit her job at the all-night restaurant, *held*, sufficient to show the requisite element of robbery of a "putting in fear", although the first thing she said to the robber when he told her that he intended to rob her was "you're kidding" (CL 1948, § 750-530).

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 181.
[2] 53 Am Jur, Trial § 480 *et seq.*
[3] 46 Am Jur, Robbery § 5 *et seq.*
[4] 46 Am Jur, Robbery § 14 *et seq.*

Appeal from Oakland; Beer (William John), J. Submitted Division 2 April 4, 1967, at Lansing. (Docket No. 2,682.) Decided July 20, 1967.

Martin L. Laker was convicted of unarmed robbery. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Robert W. Leutheuser,* Chief Appellate Counsel, for the people.

*Irwin Shulman* (*Kenneth A. Webb,* of counsel), for defendant.

McGregor, J. The appellant here appeals his conviction of unarmed robbery. CL 1948, § 750.530 (Stat Ann 1954 Rev § 28.798), for which he was sentenced to a term of 3 to 15 years in the State penitentiary.

At about 3:55 a.m. on March 29, 1965, a waitress was alone in an all-night diner in Royal Oak. A solitary man in a heavy dark coat and a chauffeur's type cap entered the restaurant and ordered a hamburger and a cup of coffee. As the food was being prepared, the man moved to one of the two cash registers and said, "O.K., this is a robbery". His hands were in his coat pockets, his coat collar was up around his neck, and his hat was pulled down. The waitress responded, "You're kidding", but upon realizing the man was serious, she followed his instructions to empty the money contained in the two cash registers into a paper bag, then to lie on the floor behind the counter. The waitress waited alone in the restaurant until a customer came in and provided her with a dime to use to call the local police on the pay phone.

The appellant's auto had been observed near the scene of the robbery and its description with a partial license plate number was broadcast on the police frequency as a suspicious vehicle. The auto was stopped and the appellant questioned by a policeman in a neighboring community, less than 30 minutes after the robbery. However, the appellant was not arrested at that time. Later that day a more complete investigation was conducted by the detective division of the Royal Oak police force, and the appellant was arrested. He was taken to the police station, where he was identified by the waitress as the man who had committed the robbery.

At the trial, the waitress was the only witness who could identify the appellant as the man who had taken the money from the restaurant. In response to the defense's attack upon the credibility of the waitress, the prosecutor made the following statements, as a part of his final argument to the jury:

"* * * So let's just talk about the point of identification.

"Ladies and gentlemen of the jury, I would like you, for the moment, to put yourself in that hamburger stand, at about 4 o'clock in the morning, as a waitress, and imagine being robbed, imagine confronting your assailant, about 2–1/2 feet, eye to eye with him. Imagine that for a moment.

"None of you have been robbed before, you've all —I've asked you that on *voir dire,* in my preliminary examination, to find out your qualifications. None of you have ever been robbed before. So the experience is one that is so unique in its nature, and is so pointed, that it's not one to be taken casually.

"Now I ask you, and you have observed the demeanor of the defendant in this cause, and I want you to look at him now. I want you to look at his features, his pale skin, the formation of his nose, his mouth, things that are uniquely him, and I'll ask you

this question, and even for the sake that he's wearing glasses now, whereas at the time of the alleged crime—the crime rather, that he didn't have his glasses on—but I want you to take a steady look at that man. And I want you to say to yourself, if you were confronted by this man, 2-1/2 feet away, looking eye to eye, while he instructed you to bail out the cash register, I want you to look and say to yourself, and if you can answer this to yourself, then you know what the disposition of this case is going to be, would you forget that face? Could you confuse that face? Is this face so common, so ordinary, that it is a face that you would tend to confuse with someone else? If you can answer that question, then you know what the disposition of this case will be."

The appellant claims that it was prejudicial error to allow this argument, as it improperly put the jury in the place of the complaining witness. The argument is that, in effect, the jurors were asked to become detectives, a practice condemned by the Supreme Court in *People* v. *O'Brien* (1893), 96 Mich 630. In this case, however, the prosecuting attorney did not ask the jury to perform any function other than that which the law designated to it. The credibility and weight to be given the testimony of a witness is within the province of the jury. *People* v. *Hancock* (1950), 326 Mich 471; *People* v. *Fleish* (1943), 306 Mich 8. What the prosecutor asked the jury to do was not to be detectives, but rather can be likened to asking them to use their common sense in performing their functions, which is not condemned. *People* v. *Ringsted* (1892), 90 Mich 371. Accordingly, we find no reversible error on this point.

The other claim of error by the appellant is that there was insufficient showing of the requisite element of robbery of a "putting in fear" in order to

support the conviction. We do not agree. The circumstances here of a waitress alone in the early morning hours, and a man ordering her to hand over money and lie on the floor, were enough to induce fear. The waitress stated that she was frightened at the time and that the incident so unsettled her nerves that she quit her job at the all-night restaurant. As stated in *People* v. *Kruper* (1954), 340 Mich 114, 121:

"The threat to do 'injury to the person or property', * * * when accompanied by force, actual or constructive, and property or money is given up in consequence of that force, these elements can constitute robbery. Whenever the elements of force or putting in fear enter into the taking, and that is the cause which induces the party to part with his property, such taking is robbery. This is true regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand."

The only indication that the waitress was not put in fear was her initial remark, "You're kidding." We are not inclined to place great importance on the initial reaction of the waitress. What is important is the entire factual situation presented in the record.

The conviction is affirmed.

QUINN, P. J., and A. C. MILLER, J., concurred.