PEOPLE *v.* MISTER FOOD, INC.

1. FOOD—ADULTERATION OF FOOD—FRESH BEEF.

The Michigan comminuted meat law proscribes the selling and offering to sell fresh beef as hamburger if it contains in excess of 30% fat and as ground beef if it contains more than 20% fat (MCLA § 289.582).

2. FOOD — ADULTERATION OF FOOD — FRESH BEEF — FAT CONTENT — METHOD OF ANALYSIS.

Analysis of comminuted fresh beef by weight in order to determine its fat content is proper even though other methods of analysis exist, where the statute does not prescribe the method of analysis to be employed, testimony reveals that the official manual of methods of agricultural chemists states that analysis by weight is an accepted practice, and there was no testimony of other published methods of analysis (MCLA § 289.582).

3. FOOD—COMMINUTED BEEF—STATUTES—STANDARDS.

Statute prescribing the maximum fat content of fresh comminuted beef must have had in view some standard, and where one accepted method of fat analysis exists, the statute must be held to have contemplated that standard (MCLA § 289-.582).

4. WITNESSES—CREDIBILITY—EVIDENCE—CONFLICTING TESTIMONY—JURY.

The credibility of a witness's testimony is within the province of the jury and where there was conflicting testimony as to whether the defendant was selling meat loaf or hamburger, the decision turns on the credibility of the witnesses and was for the jury's determination.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 35 Am Jur 2d, Food § 21 *et seq.*
    Validity, construction and application of statutes or ordinances relating to inspection of food sold at retail. 127 ALR 322.
[4] 58 Am Jur, Witnesses § 862.

Appeal from Recorder's Court of Detroit, Henry L. Heading, J.   Submitted Division 1 November 9, 1970, at Detroit.   (Docket No. 8271.)   Decided December 4, 1970.

Mister Food, Inc., was convicted of selling or offering to sell hamburger with a fat content in excess of the statutory limit.   Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*I. Goodman Cohen,* for defendant.

Before: V. J. Brennan, P. J., and Levin and Peterson,* JJ.

Per Curiam.  Defendant, operator of a retail food store in Detroit, Michigan, was convicted of violating the comminuted meat law (MCLA § 289.582 [Stat Ann 1970 Cum Supp § 12.964 (2)(c)]), by selling or offering to sell hamburger with a fat content in excess of the statutory limit.   Section 2(c) of the law provides:

"Fresh beef that has been comminuted, chopped, diced or ground shall be identified as either hamburger or ground beef and shall meet the following standards.   Hamburger shall consist of comminuted, chopped, diced, or ground fresh beef with or without the addition of beef fat as such, and shall not con-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tain more than 30% of fat.  Ground beef shall meet the same requirements as hamburger except that it shall not contain more than 20% fat."

The testimony indicated that the hamburger in question contained 38.2% fat by weight analysis. Defendant points out that the statute does not prescribe weight analysis, however, and that there are other possible methods of analysis.  Defendant contends that this lack of a prescribed method of measurement of fat content leaves the statute so vague and uncertain as to be unconstitutional, citing *People* v. *Goulding* (1936), 275 Mich 353.

It is true that there may be other methods of fat measurement than by weight.  The record discloses, however, that a volume analysis would have found a higher fat content in the specimen taken.  The record also discloses an accepted practice of fat measurement by weight, according to procedures set out in *Official Methods of Associations of Official Agricultural Chemists*.  The uncontradicted testimony of the state's chemist was that there was no other published method of analysis.

In *People* v. *Jennings* (1903), 132 Mich 662, the Court was concerned with adulteration of lemon extract under a statute which contained no specific standards or measurements.  Trial testimony established the existence of a common acceptance of the United States Pharmacopœia formula for lemon extract.  It was held that when the legislature enacts protective legislation regulating food content, it,

"  *  *  *  must have had in view some standard; and, as lemon essence or lemon extract had theretofore acquired a well-defined meaning, we incline to the view that it is proper to resort to the pharmacopoeia formula  *  *  *  ."

In the present case, there being one accepted method of fat analysis, *i.e.,* by weight, the statute must be held to have contemplated that standard, a standard which could leave those dealing in comminuted meats in no doubt as to their statutory obligation.

Defendant also contends that the clerk told the inspector he was selling meat loaf instead of hamburger. There is conflicting testimony. The decision turns upon the credibility of the witnesses. It was proper, therefore, for the jury to make its determination. *People* v. *Morris* (1968), 12 Mich App 411.

Finding no reversible error for the reasons discussed above, this Court affirms the decision of the trial court.

Affirmed.