NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0260n.06

No. 15-2298

FILED
May 08, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EARNEST EARL MATTHEWS | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:    MERRITT, BATCHELDER, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  A jury convicted Earnest Matthews of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He raises three issues on appeal:  (1) whether the Fourth Amendment required suppression of a firearm; (2) whether an evidentiary determination by the district court was erroneous; and (3) whether the unarmed robbery for which he had been convicted under Michigan law was a violent-felony conviction for purposes of the Armed Career Criminal Act.  For the following reasons, we AFFIRM the district court's orders on all three issues.

**I.**

Around 9:45 p.m. on October 24, 2014, two Detroit police officers were driving their patrol car when they saw Matthews on the street.  Believing that Matthews matched the description of the suspect in a robbery that had occurred in the area nine days before, the officers initially tried to speak to him through their car window.  When one of the officers started to get

out of the car, Matthews ran, and the officer chased after him. While running, Matthews removed a pistol from the front pocket of his hooded sweatshirt. The officer, who was a few feet behind Matthews at this point, yelled, "Drop it or I'll shoot." Matthews ran into an alley, where he threw the pistol toward a fence. He then tripped over a hose and tumbled to the ground, where the officer put him under arrest. The other police officer, who had followed Matthews in the patrol car, immediately retrieved the abandoned pistol.

Matthews was charged with being a felon in possession of a firearm, and he moved to suppress the pistol as evidence against him, claiming that the officers had had no basis on which to arrest him. At an evidentiary hearing on this motion, he disputed the officer's version of the events leading to his arrest. According to Matthews, the officers tripped him and demanded to know whether he was 6'2" and weighed 200 pounds. He told them that a person matching this description was in the alley. He also testified that the officers had planted the gun on him. The district court denied the motion to suppress on the ground that "[t]he firearm was not recovered from [Matthews's] person . . . [and therefore Matthews] has not demonstrated he had a reasonable expectation of privacy with regard to the firearm."

At a pretrial conference, Matthews argued that the government's claim that he matched the physical description of the robbery suspect was untrue and that this evidence could lead the jury to infer that he had committed the earlier robbery, which would prejudice the jury against him. The district court ruled that the evidence was not relevant, because whether Matthews matched the description of the robber had no bearing on whether he possessed the pistol nine days later. The district court also stated that the government could seek to introduce the evidence in rebuttal or redirect examination should Matthews contest the stop.

At trial, Matthews reversed course and sought to introduce the description of the robber over the government's motion *in limine* to exclude that evidence. Matthews argued that there was a disparity in the description of the robber and his own physical attributes, and that this disparity called the officers' perception into question. But the district court adhered to its earlier ruling that the evidence was not relevant.

Matthews did not testify at his trial, and the jury returned a verdict of guilty. Matthews's presentence report indicated that he had prior felony convictions for armed robbery, carjacking, and unarmed robbery. Matthews argued that unarmed robbery in Michigan did not constitute a violent felony for purposes of the Armed Career Criminal Act ("ACCA"), but the district court disagreed and sentenced him to the ACCA's mandatory minimum sentence of fifteen years' imprisonment. This appeal followed.

## II.

### A.

We affirm the district court's decision denying Matthews's motion to suppress the pistol. When reviewing a district court's decision on a motion to suppress, we review findings of facts for clear error and conclusions of law de novo. *See United States v. Kinison*, 710 F.3d 678, 681 (6th Cir. 2013). The district court did not clearly err in finding that the officers' version of the events on October 24 was more credible than Matthews's. According to the officers, Matthews abandoned his pistol—and therefore any expectation of privacy that he had in it—when he threw it. *See United States v. Robinson*, 390 F.3d 853, 873–74 (6th Cir. 2004) ("If property has been 'abandoned' . . . the Fourth Amendment is not violated through the search or seizure of this property.").

Furthermore, Matthews began his encounter with the officers by voluntarily answering their questions. Such a voluntary conversation with police is not a "seizure" under the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). Therefore, Matthews's argument that the officers lacked reasonable suspicion to stop him fails; reasonable suspicion was not required.

## B.

We review evidentiary rulings for abuse of discretion. *See United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006). We find no such abuse in the district court's rejection of Matthews's eve-of-trial change of heart concerning the admissibility of the robber's description. Matthews initially requested that the jury not hear any testimony concerning the description of the earlier robbery suspect. It was not until after counsel had presented their case statements to the prospective jurors during voir dire that Matthews reversed course, arguing that the difference between his size and the suspected robber's size called into question the police officers' perceptive abilities. The district court had already heard the officers' and Matthews's testimony on this point and had resolved a pretrial motion to exclude this evidence. Although the evidence of the robbery suspect's physical description may have been tangentially related to the officers' credibility and perceptive abilities, the district court did not abuse its discretion by determining that it would abide by its earlier evidentiary determination.

## III.

The jury convicted Matthews of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Ordinarily, this offense warrants a maximum sentence of ten years' imprisonment. 18 U.S.C. § 924(a)(2). The Armed Career Criminal Act, however, imposes a mandatory minimum sentence of fifteen years' imprisonment when a person with three previous

"violent felony" convictions violates § 922(g). *Id.* § 924(e)(1). The ACCA defines that key

term:

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

*Id.* § 924(e)(2)(B) (emphasis added). The italicized portion of this statute is known as the

"residual clause," which the Supreme Court has declared unconstitutionally vague. *See Johnson*

*v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"). *Johnson II* did "not call into question

application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's

definition of a violent felony." *Id.* at 2563.

The district court found that Matthews had three prior convictions for offenses that were

violent felonies and sentenced him to the mandatory minimum sentence of fifteen years in

prison. "We review de novo a district court's determination that an offense constitutes a 'violent

felony' under the ACCA." *United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014). For

the following reasons, the district court properly held that unarmed robbery under Michigan law

constitutes a violent felony.

Matthews's unarmed robbery conviction is from 1983, but Michigan has since amended

its statute. We analyze the version in effect at the time of his conviction:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not

being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years.

Mich. Comp. Laws § 750.530 (P.A. 1931, No. 328 § 530) (amended by P.A. 2004, No. 128 (effective July 1, 2004)).[1] The issue is whether this constitutes a violent felony. That is, we must determine whether the statute "has as an element, the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court defines "physical force" as "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*").

Matthews contends that because one may commit unarmed robbery in Michigan by "putting [another person] in fear," the statute does not require "the use, attempted use, or threatened use of force against another" and is therefore overly broad. After carefully considering the relevant authority from Michigan, we disagree. *See Mitchell*, 743 F.3d at 1058–59 (explaining that this court is "bound by" a state supreme court's interpretation of an offense). Michigan unarmed robbery requires physical force or the threat of physical force in order to sustain a robbery conviction.

Under the Michigan statute, one can accomplish an unarmed robbery by *putting a person in fear*, which the Michigan Supreme Court has held to mean *fear of personal injury*. The Michigan Supreme Court has explained that its state legislature codified common law robbery in the unarmed robbery statute. *See Michigan v. Randolph*, 648 N.W.2d 164, 167–68, 171 (Mich. 2002) ("[R]obbery is a larceny aggravated by the fact that the taking is from the person, or in his presence, accomplished with force or the threat of force."), *superseded by statute*, P.A. 2004, No.

---

[1] This version of the statute and the current version have at least one key difference. In the version at issue here, the first of the several alternative means of committing an unarmed robbery is "by force *and* violence." Note that the phrase is conjunctive. The current statute, however, is disjunctive, penalizing a person who "uses force *or* violence against a person who is present." Mich. Comp. Laws § 750.530. We need not address this distinction here, but future cases addressing Michigan unarmed robbery may need to do so.

128, *as recognized in Michigan v. March*, 886 N.W.2d 396 (Mich. 2016). *Randolph* analyzed whether violence that occurred during a defendant's flight following a larceny escalated the larceny to a robbery. The Michigan Supreme Court explained at length that violence or putting in fear are foundational elements of robbery at common law, citing Blackstone and other commentators. A repeated point in this discussion is that "putting in fear" requires putting a person in fear *of injury*. *See Randolph*, 648 N.W.2d at 167–168 & 167 n.6 ("Feloniously taking the property of another in his presence and against his will, *by putting him in fear of immediate personal injury*, is robbery at common law." (emphasis added) (quoting RAPAJLE, LARCENY & KINDRED OFFENSES § 445 (1892))). The *Randolph* court did not contradict this language and quoted it with approval.

Other Michigan case law strengthens the conclusion that a threat of injury is necessary to put someone in fear. In *Michigan v. Kruper*, 64 N.W.2d 629, 632 (Mich. 1954), the Michigan Supreme Court provides important context for how it views robbery:

> Whenever the elements of force or putting in fear enter into the taking, and that is the cause which induces the party to part with his property, such taking is robbery. This is true regardless of how slight the act of force or the cause creating fear may be, provided, in the light of the circumstances, the party robbed has a *reasonable belief that he may suffer injury unless he complies with the demand*.

*Id.* (emphasis added). This definition complies with *Johnson I*, because it means that the act causing the victim to be put in fear—however slight—must be "capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140.

When Michigan courts apply this test to determine whether a victim was put in fear, they ask whether the victim believed that injury was likely to result if he or she failed to comply. *See, e.g.*, *Michigan v. Hearn*, 406 N.W.2d 211, 214 (Mich. Ct. App. 1987) ("When a person is induced to part with property out of fear, the test to determine whether a robbery has been

committed is whether 'the party robbed has a reasonable belief that he may suffer injury unless he complies with the demand.'" (quoting *Kruper*, 64 N.W.2d at 632)). For example, when a robber orders a waitress to lie on the floor and surrender her money when she is alone in the wee hours of the morning, the waitress' fear of personal injury is sufficient for a robbery conviction in Michigan. *See People v. Laker*, 151 N.W.2d 881, 883–84 (Mich. Ct. App. 1967) (citing *Kruper*, 64 N.W.2d at 632). Because Michigan law requires one to fear injury in order to be "put in fear," Michigan's statute criminalizing unarmed robbery is a violent felony for purposes of the ACCA.

Two of our sister circuits have reached the same conclusion in persuasive opinions. *See United States v. Tirrell*, 120 F.3d 670, 679–81 (7th Cir. 1997) ("[U]nder Michigan law, the element of putting in fear means threatening the use of physical force against the person of another."); *see also United States v. Lamb*, 638 F. App'x 575, 576 (8th Cir. 2016), *vacated on other grounds by* 580 U.S. __ (Nov. 28, 2016).

Matthews argues that *Tirrell* is no longer good law because the Seventh Circuit decided it before the Supreme Court defined "physical force" as "violent force" in *Johnson I*. But *Tirrell* specifically stated that its conclusion relied on the difference in Michigan law between a robbery conducted through threat of physical force and one conducted through other threats of injury. *Tirrell*, 120 F.3d at 680 (citing *People v. Krist*, 296 N.W.2d 139, 143 (Mich. Ct. App. 1980) ("Larceny by fear of immediate bodily harm or violence to the person will be prosecuted as robbery; the unlawful obtaining of property by threats of a different nature, i.e., threats of future harm, will ordinarily constitute a different offense such as extortion.")). Therefore, because it read Michigan law to require a threat of physical injury, *Tirrell* held that "the element of putting in fear means threatening the use of physical force against the person of another." *Id.*

Accordingly, the district court properly determined that unarmed robbery in Michigan is a violent felony for purposes of the ACCA.

## IV.

For these reasons, we AFFIRM Matthews's conviction and sentence.

**MERRITT, Circuit Judge, dissenting.**  I do not agree with the majority's holding that Michigan's unarmed robbery statute amounts to a "violent felony" under the Armed Career Criminal Act.  In my view, the Michigan Supreme Court has neither expressly nor impliedly held that the statute's "putting in fear" element is limited to "fear of bodily injury from physical force offered or impending."  Accordingly, I would vacate the defendant's sentence and remand the case for resentencing without application of the fifteen year mandatory minimum provided for under 18 U.S.C. § 924(e).

The Armed Career Criminal Act begins with the statute criminalizing the possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), which provides:  "It shall be unlawful for any person—(1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . ."  If the felon has three or more earlier convictions of a "violent felony," the "Armed" Act increases his prison term to a minimum of fifteen years.  § 924(e)(1).  The Act defines "violent felony" as follows:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that—
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

§ 924(e)(2)(B) (emphasis added).

The closing words of this definition, italicized above, are known as the "residual clause" of the Armed Career Criminal Act.  In June of 2015, the Supreme Court declared the residual clause unconstitutional as void for vagueness.  *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015).  Accordingly, the fifteen-year mandatory minimum is only applicable where a crime "has as an element the use, attempted use, or threatened use of physical force against the person of

another," 18 U.S.C. § 924(e)(2)(B), or is one of the four specific offenses enumerated in § 924(e)(2)(A).

In the instant case, both sides agree that Matthews has two felony convictions (armed robbery and carjacking) that meet the definition of "violent felony," but they disagree that the third felony—"unarmed robbery" under Michigan Penal Code § 750.530(1)—meets the definition of "violent felony." At the time of Matthews's conviction, that Michigan statute read as follows:

> Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years.

Mich. Comp. Laws § 750.530 (P.A. 1931, No. 328 § 530) (subsequently amended by P.A. 2004, No. 128) (effective July 1, 2004)). Thus, the Michigan statute says that it may be violated by an unarmed person who uses violence or threats of violence, but the statute also allows a conviction for putting a person "in fear."

The parties agree that the record before the district court and this Court does not disclose how the "unarmed" robbery in question was committed. Specifically, the record does not indicate whether Matthews threatened violence or simply put the victim in "fear" of some type of nonphysical injury, such as loss of peace of mind or reputation or some benefit not associated with bodily integrity—for example, a job, an inheritance, the affection of a spouse or friend, or a position of honor. People have many types of "fear" besides fear of violence or physical injury. Thus, the phrase "or puts the person in fear" in the Michigan statute is ambiguous.

This Court has previously held that "putting in fear" is only equivalent to the "use" or "threatened use" of physical force under § 924(e)(2)(B) when the state supreme court interprets

"fear" to include only "fear of bodily injury from physical force offered or impending." *See United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014); *see also United States v. Fraker*, 458 Fed. App'x 461, 463 (6th Cir. 2012) (holding the plain text of Tennessee's robbery statute fell outside of the Armed Career Criminal Act's definition of "violent felony" because "a defendant can violate the [plain text of the] statute by employing only fear, rather than physical violence or force"). Contrary to the majority's holding, the Michigan Supreme Court has never clearly limited "putting in fear" to cases involving conduct intended to put the victim in fear of immediate *physical* injury, as required by the Act. *See Michigan v. Gardner*, 265 N.W.2d 1, 5 (Mich. 1978) ("Attempted robbery unarmed may therefore be committed simply by putting someone in fear while assault with intent to rob unarmed requires an assault with force and violence."); *Michigan v. Kruper*, 64 N.W.2d 629, 632 (Mich. 1954) ("The threat to do 'injury to the person *or property*,' . . . when accompanied by force, actual or constructive, and property or money is given up in consequence of that force . . . can constitute robbery." (emphasis added)).

The majority incorrectly reasons that the Michigan Supreme Court's reliance on the common law definition of robbery in interpreting the unarmed robbery statute means that "putting in fear" must be interpreted as "putting in fear of bodily injury." It is certainly true that the Michigan Supreme Court has observed that the unarmed robbery statute was essentially a codification of the common law offense of robbery. *Michigan v. Randolph*, 648 N.W.2d 164, 167 (Mich. 2002). However, the majority is wrong to conclude that, based on that fact, "putting in fear" must be limited to cases involving fear of *physical* injury. At common law, a victim was held to have been "put in fear" when the defendant made certain threats against his property or his character. 2 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors* 71 (1828). Indeed, English common law courts held that threats to injure a victim's property

alone—as distinct from his person—were sufficient to put the victim "in fear," transforming simple larceny into a robbery. *Id.* at 72-75 (collecting cases). Those courts also held that a threat against a victim's character by means of an accusation of sodomy was sufficient to put the victim "in fear." *Id.* at 76-88 (citing *Jones's Case* (1776) 2 East. P.C. 714; *Hickman's Case* (1783) 2 East. P.C. 728; *Donally's Case* (1779) 2 East. P.C. 715-28). In *Hickman's Case*, specifically, Lord Ashhurst held that "whether the terror arises from real or expected violence to the person, or from a sense of injury to the character, the law makes no kind of difference; for to most men the idea of losing their fame and reputation is equally if not more terrific than the dread of personal injury." *Id.* at 81 (quoting *Hickman's Case*, 2 East. P.C. 728). Even discounting the character-based holdings as inconsistent with our more modern notions of morality, the authorities make clear that there was no *per se* requirement at common law that a robbery be accomplished by means of employing or threatening physical force against the victim's person.

Where, as here, an undefined phrase in a criminal statute had a settled meaning at common law, the Michigan Supreme Court "assume[s] that the Legislature adopted that meaning unless a contrary intent is plainly shown." *Michigan v. March*, 886 N.W.2d 396, 402 (Mich. 2016) (internal quotations omitted). "Putting in fear" had a settled meaning at common law that did not require a threat of injury to the person, and Michigan's legislature has not expressed any intent to deviate from that meaning. Accordingly, the Michigan Supreme Court's decision in *Randolph* stands for exactly the opposite of the majority's conclusion: the unarmed robbery statute can be violated without "the use, attempted use, or threatened use of physical force against the person of another" and, as a result, it is not a "violent felony" under the Armed Career Criminal Act. 18 U.S.C. § 924(e)(2)(B).

The title of the statute is the "*Armed* Career Criminal Act." "Unarmed" robbery that includes simply "putting in fear" when people have many different kinds of "fear" is insufficient to constitute one of the types of wrongs that the Armed Career Criminal Act defines as the "use" or "threatened use of physical force." 18 U.S.C. § 924(e)(2)(B). Even if the statute were ambiguous after applying the relevant principles of statutory interpretation—which it is not—I would apply the rule of lenity and interpret the ambiguity in favor of the criminal defendant. *See United States v. Ford*, 560 F.3d 420, 425 (6th Cir. 2009). The defendant's actual crime here is walking down the street with a pistol in his pocket. It would be better for the sentencing judge to have the leeway to impose a lighter sentence if the judge is so disposed rather than to have to impose a long, "mandatory" sentence. The old system prior to the advent of mandatory, long sentences worked better and allowed the judge to take the possibility of rehabilitation into account and allowed for a less harsh, more humane system of punishment.

Because I would hold that the Michigan unarmed robbery statute is not a "violent felony" under the Armed Career Criminal Act and that the defendant is entitled to resentencing, I respectfully dissent.